May it please the court, my name is Bob Peltz. And along with Louis Vucci, we represent the appellant Cvoro. The real issue in this case is not the arbitration clause in Carnival's contract, since the arbitration has already occurred. It is also not even about applying Panamanian law in general. Instead, the issue in this case is very narrow. Whether the separate choice of law provision inserted by Carnival into its contracts with its seamen for the intended purpose of depriving those seamen of their statutory Jones Act remedies, pursuant to which the arbiter expressly concluded that he could not determine this statutory claim, renders the resulting arbitration an award in violation of public policy under Article V of the Convention. If Carnival had not opposed Cvoro's attempt to have her Jones Act case determined in the arbitration, there would have been no case filed and we wouldn't be here. As such, this case is precisely the one that the Supreme Court warned about in Mitsubishi when it stated that if, when it cautioned, it would have little hesitation in condemning us against public policy, choice of law, and arbitration clauses which operate in tandem to deprive a litigant of their statutory remedies. In Epic Systems v. Lewis, the Supreme Court has never actually applied that, I mean, and they've referred to it as dicta, so I'm not saying it's meaningless, of course, but it does make you think, what exactly did they mean by that? And what I'm wondering is, it seems to me that what they may have meant was that there has to be some type of, not necessarily equivalent, but some type of other remedy available under the foreign law that would make it so that it's not fundamentally unfair not to offer the statutory remedy. And I wonder what your thoughts are. Sure, well, to respond, first of all, although that quote has been referred, from Mitsubishi has been referred to as dicta, the Supreme Court, as pointed out in our briefs, has repeated it time and time again, most recently in the Italian Colors case. And therefore, it seems that they're serious about meaning what it says since they keep repeating it. I think it's also very significant to note that in the cases in which it has arisen, they have all occurred at the arbitration enforcement stage before the arbitration. And as one of the things that was significant, as pointed out in Vimar and some of the other Supreme Court cases, and actually Lindo recognized this as well, that it's important to first go ahead and give the arbiter the chance to consider which law will be applicable and then to see how the arbiter rules to avoid speculation. And I guess that's probably what turns perspective waiver into effective indication. And we're at that latter stage. I mean, we're at the stage now where there is no speculation. Sforo went through the arbitration. She repeatedly raised her Jones Act case, or Jones Act claim based upon- She didn't make any other claims, though. I mean, you know, it appears that there were other claims that might have been available under the Panamanian law, and she did not make those claims. If she had made those claims and it turned out that they weren't available, then it seems to me she might have been in a different position coming before us now. Well, with all due respect, Your Honor, what happened is that, and Carnival has taken the position that there were two claims that could have been asserted under Panamanian law. One was based upon disability, and the other was based upon negligent hiring. The problem is that, and the lower court seemed to confuse and conflate the two, and contrary to the district court statement that Sforo did not pursue a remedy for disability, the criminal arbitration award, which is part of the record on appeal in this case, that Sforo was not entitled to assert a claim for disability benefits for the exact same reason that Panamanian law did not recognize the claim for vicarious liability. And that is that anything that occurred after she left the ship was considered to be a new injury for which the employer cannot be held vicariously liable. So how big of a delta does there have to be between the available claims and remedies in the United States and the available claims and remedies in the forum state? It's obvious that they don't have to overlap completely in order for public policy to permit that to go forward. Well, that's correct, Your Honor, and I think one of the points that was also addressed in Lindo, although I think it was dicta in that case because Lindo primarily dealt with the timing that one could assert the public policy defense, but using that as an example, in Lindo, the choice of law clause called for arbitration under Bahamian law. And as the court pointed out in Lindo, under Bahamian law, the plaintiff had a cause of action for negligence that was applicable to the facts of the case and had the same damages. The only difference was that the plaintiff did not have the reduced burden of causation in that case. But that's not our case. I mean, our case was Sevoro had no remedy whatsoever. The Jones Act very clearly provides a remedy for vicarious liability against an employer for the negligence of the shoreside doctors it selects to treat the seaman, and that was not our case. The Sambula case, which is obviously binding on this court, and is also- I don't want to interrupt you, but I know obviously you think that there is enough of a delta here, but what I'm looking for is the rule that you would like for us to set. What's the rule that's going to apply in all cases? Well, first of all, I'm not sure that that is necessary to address in this case because in this case, the facts are very clear that the plaintiff did not have any remedy. And what we're asking the court to do is to allow us to proceed forward to effectively vindicate the Jones Act remedy. Well, she didn't have the remedy for the vicarious liability claim, but she did have remedies for other claims related to this incident, right? She had a claim- well, none that were applicable. As the two claims that were pointed out by Carnival and that were addressed in the district court's opinion, the first was a claim for disability, which as I pointed out, the arbiter expressly ruled upon and said was not applicable to the facts of this case for the same reason the vicarious liability claim was not applicable. The second was a claim based upon negligent hiring, which is a completely different claim, which is clearly even recognized by the district court itself. For example, on page four of the district court's opinion, the court says, the employer's vicarious liability under the Jones Act for the negligence of the shoreside physician is completely distinct and separate from its liability for its own direct negligence in failing to properly select a competent physician in the first instance, and it goes ahead to- But what would the damages be for such a claim? I think the damages would- well, potentially would be similar because once again, you'd have to show how the act caused the damages. The real issue in this case is liability, and in this case, unlike Lindo, under Panamanian law, the plaintiff had no cause of action for liability, and I think, trying to get back to one of your earlier questions- Well, she had no cause of action for vicarious liability. Yes, Your Honor. She had a cause of action. She had multiple cause of actions. For facts, based on facts that had no application of the case. Yeah, but her problem was her facts didn't meet the requirements for negligent hiring or the other disability claim. I had a question about under- since the doctor was from Serbia, did she have a cause of action for negligence just against the doctor, and he's in that country? That's a separate thing from Carnival, I understand. I honestly don't know the answer to that question. I have no . . . I don't know what Serbia was. I was confused. I know she got paid her medical expenses, and she got paid the travel back to her home country. Correct. And there was something about cure and maintenance. Did she recover cure and maintenance from Carnival, and to what extent? Or is that just medical expenses? Well, cure would be medical expenses, and maintenance would be living expenses while you are . . . Did she get some wages or some living expenses for at least a . . . like a worker's comp thing? See, I thought the disability claim she had in Panama was like a worker's comp claim, but she didn't want to do it against Carnival because Carnival really won the problem. That was their doctor. What maintenance did she get? I think she received some maintenance. I think initially there was some issue. Maintenance under maritime law is just living expenses while you're receiving medical care. I think she did receive some of that, and initially there was some issue as to whether or not she had received all of the maintenance that she was entitled to, but it was subsequently determined that she had received it all. Okay. I've got a question about jurisdiction, although I don't think it's going to affect your case, but ordinarily under the New York Convention, vacature can only be carried out in the forum state. Isn't that right? That's correct. Can I back off on that? Can I answer that? Sure. As pointed out, that issue was raised in the district court at the beginning of the case when Carnival moved to dismiss the complaint, and as pointed out in the magistrate's rather which was adopted in full by the district court, there is some conflict on the law on that issue. Although this court, I think in Gassius, I'm probably mispronouncing it, indicated, I think in dicta, that that would be the rule that would have followed. Is this recovery of medical expenses and care and maintenance because the cruise line just did that, or was that pursuant to some claim she had under Panamanian law? I think that there was an issue at the time that claim was made as to whether the medical expenses had been paid in full or they were continuing them until she had reached the point of maximum medical cure, and it was subsequently determined . . . No, but what was that pursuant to? Was that pursuant to some type of claim under Panamanian law, or was it just because that's what they do for their employees? To be honest with you, I'm not sure about that. If I could just go back to Judge Grant, your question there. Sorry, I've forgotten the question. It was about . . . Oh, the jurisdiction, yes. As further pointed out, it doesn't really matter in this case because we have first of all, and this was essentially what the district court had ruled in adopting the magistrate's and that is that we had asked the court to vacate or in the alternative, to refuse to recognize the award in whole or in part, and really we're traveling on the latter issue, although we pled both alternatively, I guess as a prophylactic measure, and frankly it's not even necessary, I don't believe, for the court to refuse to recognize the entire arbitral award. It's not our intent to go and litigate issues that were decided under Panamanian law and do all that again. Our request for relief is very narrow, and that is that we're asking the court for the opportunity to go ahead and effectively vindicate our Jones Act remedy based upon vicarious liability for the negligence . . . We'd have to vacate the arbitration award to do that. I'm sorry, Your Honor? We'd have to vacate the arbitration award to do that in favor of Carnival. Because Article 5 of the convention talks in terms, under the public policy exception, which is the one we're traveling under, talks in terms of refusing to recognize the award, and also in the Aguero case, which . . . What's the difference between refusing to recognize the award that was in favor of Carnival versus vacating it? Because the award, the part that were challenging, there was never a determination on the merits. As pointed out by the district court, specifically on page 5 of his opinion, where he says, Here, however, the arbiter chose not to adjudicate the Jones Act claim, finding that United States law did not apply under the Seafarer's Agreement. The question in this case is whether the decision violates this nation's public policy as embodied in Gray, Semble, and Fitzgerald. The court never ruled or determined that issue. You would pursue that claim in district court? The Jones Act claim based upon vicarious liabilities. You would just pursue it as a statutory cause of action in district court? Yes, Your Honor. That's what we're seeking. Thank you, Your Honor. Thank you, counsel. Good morning. May it please the Court. My name is David Hoar. Along with Stephanie Wiley, we represent Carnival. We submit that the proper result here is to affirm the district court's opinion. The district court properly concluded that Savoro failed to sustain her burden of proving that recognition or enforcement of the arbitration award here would be contrary to an established public policy of the United States. Reaching this conclusion, the district court properly recognized that because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law. Moreover, the district court properly recognized that the arbitration convention's public policy defense should be construed narrowly and with a required presumption to enforce the award. To overcome that presumption, the challenging party must prove enforcement of the award would violate the forum state's most basic notions of morality and justice. What do you make of the Mitsubishi Motors footnote? I think it's dicta. I think Your Honor's comment that the Supreme Court hasn't acted on it is accurate. But my opposing counsel does raise a point that it has been repeated in recent years by the Supreme Court.  So what do you think it means? I think it means that where by virtue of insertion of an arbitration clause, it virtually renders any remedy for the claimant a nullity, just in terms of there's nothing there, then that would be invalidated, which is not what we have operating here. To go to Judge Hull's question to Mr. Peltz, Ms. Sovorrow was paid maintenance and cure benefits pursuant to the Panamanian law. The Panamanian law pretty much mirrors what American law has for crew claims. It has a negligence claim for direct negligence. It has a maintenance and cure claim, just like the United States law does. And the only thing that it lacks is this notion of vicarious liability for the medical malpractice of a shoreside physician. Is the maintenance and cure claim statutory under Panamanian law? No, it's a facet of Panamanian law, just like the maintenance and cure claim is in the United States. So in addition, in Panama, Ms. Sovorrow potentially qualified for another remedy, and that's a vocational disability remedy. By virtue of her proof of an inability to return to work, she would qualify without respect to fault for certain benefits. Now the distinction that operates here, and I think Judge Hull recognized it, is the facts of this case may not, in terms of what went on with Ms. Sovorrow, she may not qualify for those remedies by virtue of the facts. But in contrast to Mitsubishi, as a matter of law, she had access to them. Whereas I think Mitsubishi was contemplating a scenario where there wouldn't even be any access at all. So to put it in terms of Judge Grant's question, you think that the difference between what is offered by foreign law and what is statutorily available under United States law, there has to be nothing offered by foreign law, is that right? I just want to make sure I'm understanding your position. I think nothing in the sense of, Your Honor, that it would be total futility, it would be a non-existent remedy, not driven by facts, but by legal availability. And the reason why that's important, I think Mitsubishi's further distinguishable for the claimant here is the notion that it's a statutory right proposition, okay? You know, Mr. Peltz makes reference to this right to recover vicarious liability under the Jones Act, and he cites the Sambula case for that. He doesn't cite the Jones Act for that. And there's a very good reason, because he can't. The Jones Act, by its term, does not create this vicarious liability of the employer for the sure side negligence of a treating doctor. That's nowhere in the Act. The district court recognized that. That notion, that extension, came about judicially in 1968 when Sambula was decided, and the Supreme Court, in doing so, utilized common law concepts that we were just talking about with Judge Hull about the maintenance and cure, and the duty of the employer to provide medical treatment. Can I ask you a question? If the dicta should be construed as meaning there must be no remedy available, why would the Supreme Court not just say that, which is a lot simpler to say than fundamentally unfair? Well, fundamentally unfair connotes the notion, because the other dynamic that's in play, to answer your question, is this notion of, just because there's a foreign law aspect, it doesn't have to be equivalent to the United States law. The cases talk about this concept that the U.S. shouldn't be exporting its law and its expectations to foreign countries. So you have to balance that statement in the Mitsubishi against the notion that just because it's foreign doesn't necessarily mean it's no good. So I think the reason why they left that, used the language they did, is because there still has to have the concept of the result that comes about in the foreign forum, applying foreign law, can't be so fundamentally unfair that there wasn't anything. What if the cause of action gives you 50% of whatever damages you would get here? Then I think under the cases and the rationale that that would be sufficient. What about 5 or 10%? The assignation in the Fifth Circuit, that case that's cited in the briefs, addresses that point, Judge. What about 5 or 10%? I don't think it's a case of percentage, I think it's a case of availability. So I think assignation addresses itself to that. Going to the notion of the adequacy of remedy question and the public policy aspect of whether plaintiff has proven that here or appellant has proven that here, where a public policy defense to an arbitral award is in question, the U.S. Supreme Court instructs the courts to consider the source of the policy to determine whether a statutorily protected right actually exists. The Supreme Court in Shirk recognized the distinction between when federal case law implied the right of action at issue or whether the legislation itself establishes the special right. Shirk recognized that when it's a case of a judicial interpretation of the statute implying a remedy that that doesn't rise to the level of public policy where the statutory terms in and of themselves specify the right, then that would be a public policy. If you think about it, it harmonizes, it spins right out of the basic civics of our tripartite system of government. We have three branches. We have legislative, which creates the law, executive, which carries it out, judicial, which interprets it, the law. And so in this instance, public policy spins out of what the Congress declares is the public policy. And in this case, the Jones Act, there's no declaration about the Jones Act creating this notion of vicarious liability for shoreside physicians. That spun simply out of Sambula. So if you look at epic systems, the Supreme Court very recently recognized the need for respect for Congress and respect for separation of powers and the judicial restraint that this counseled. So the current judicial philosophy, the Supreme Court specifically cautioned that judges should be in terms of what the law is, not what the law should be. If you go back to cure and maintenance, can you tell me, does the record tell me what that constituted in this case? The actual numbers? Yes. Is it in the record? I'm not so sure that it's in the record, Judge, because the way it was resolved is in the arbitration process, claimant conceded that she'd received all of her maintenance and cure entitlements under Panamanian law or U.S. law. What does that normally entitle under American law? The scope of the remedy and what was paid to her. It's payment of medical expenses. Medical, what else? And it's a payment of a stipend to maintain living expenses for an interval while the crew member is undergoing treatment. And I think there was a limited, by virtue of the terms of the contract, wage recovery. Okay. And then, if you are disabled after all of this, like American law has certain disability, you can get in employment situations. Does Panamanian law have any disability? And you said they did have vocational disability, but the problem is, it's due to your work, not as opposed to the doctor, what the doctor is. Well, see, here's the thing. That's what Mr. Peltz is arguing now. But at the arbitration phase, the claimant never put forth any proof about any of that. About vocational disability. What we had was statements from the lawyers saying that we don't think we can make that claim or we don't want to make that claim because the claim we want to make is the claim under the Jones Act for vicarious liability. So instead of focusing on the claims that were available and investigating, analyzing the evidence and making a presentation to try to qualify for those, tactically, the claimant's lawyers made the choice that they wanted to focus on what wasn't available. What part of the record from the arbitration would we have here to see what was argued about vocational disability or not argued? I don't know that we have the arbitration record here to know that. I think you have the arbitrator's order. The discussion is in there. Okay. All right. So to go back to the point that I was making about EPIC systems, if you all can mentally bookmark and come back with that. Well, the reason I interrupt you is you're talking about deciding the laws versus making the laws. You're just kind of lecturing us. We kind of know about that. I know. But I was off. That's why I took you off that point. I mean, really. I wasn't trying to lecture as much as I was trying to. Well, I thought it was coming across. I'm sorry. It's okay. I was trying to give context. You know, when everybody starts saying, you're not supposed to make the law, you're supposed to whatever. Right. Just enforce the law. That's how it comes off. I was trying to give context for this next bit of legal brilliance that's going to come forth here. Okay. We all know about EPIC systems. I don't think it's a maritime case. No, it's not. All right. But anyways, the context and why I think EPIC systems is important, Judge, is ... You talk about dicta here. That's going to all be dicta, on dicta, to try to apply EPIC systems here. But go ahead. All right. The current judicial philosophy as expressed in EPIC systems contrasts markedly with the climate of judicial legislation, which was going on in the 60s and 70s and 80s, of which Shambhula is a prime example. So, there's another Supreme Court ... You're saying the same thing in a different way. Okay. The Supreme Court's decision in ... I don't even know. Who decided Shambhula? Shambhula was, I think, Judge Goldberg, I think. Is that one of our cases? It was the Fifth Circuit. It was the Fifth Circuit. Okay. I'll take you back to the record for a second. Yep. So, your argument in response to Judge Hall's question appeared to be that Sforo could have had some sort of vocational liability under Panamanian law, but chose not to pursue that, correct? Correct. And ... The claim existed, and tactically, she didn't pursue it. Is there anything else that you all suggest that she could have pursued and didn't under Panamanian law? Yes. She had a negligence claim against the employer for direct negligent acts of the employer or the employer's agents, very similar to the Jones Act. She had a maintenance and cure claim, which she conceded Carnival had satisfied, so there was nothing further to claim there. And then, in addition, she had this, what the Panamanian law styles as a vocational disability claim, which she elected in the arbitration, and you'll read it in the order, not to submit any proofs on. So, basically, she put all of her eggs, figuratively speaking, in the vicarious liability Jones Act basket. And what's the differential between the remedies available for the two claims that she let go under Panamanian law that she's trying to pursue under the Jones Act? When you say the differential, Judge, I'm not sure I understand what ... Obviously, she had some strategic reason for wanting to do one and not the other, I would think. I can't account for that. I mean, like I said before, the notion of opting to focus on what's not available versus what is, it doesn't seem to make a whole lot of sense to me. Her argument is those two vocational liability and direct negligence claims were not available because it was a doctor who did the damage, and so, therefore, because there's no vicarious liability, she couches it in terms of availability. That's kind of where the rub is. She's ... Right. I think he's saying they are not available claims because there's no tort principle of vicarious liability recognized as opposed to direct negligence. That's their argument. Right. But we submit that, as I had pointed out to Judge Grant, that under the Panamanian law, she did have claims. She just elected not to pursue them in the arbitration process. Quickly, what's your response to the jurisdictional question about jurisdiction of the United States to vacate an award from a different jurisdiction? That would be controlled by the convention. What do you think the convention says about that? I think, in this instance, Article V, in theory, where there is a breach of U.S. public policy, I think the United States is a second ... They're not the primary jurisdiction, they're a secondary, so they can only invoke, I think it's Article V-2B, that provision of the statute. It's a statutory mechanism that Congress has enacted, which is also a very important concept here. We have the treaty powers of the United States, Congress enacted this act, and all of that supersedes domestic legislation. Last point, very quickly. I know I'm flirting with it, being over time. You actually are over time. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Counsel. You have four minutes left. First of all, I'd like to go back to one of the questions that Judge Grant had asked before about really what is the test for trying to determine whether there's been an effective vindication of the Siemens remedies. I haven't found a case that has specifically set forth an all-encompassing test, but I think in Italian colors, the Supreme Court talks about the parameters of it. In Italian colors, the court said that it would certainly cover a provision in an arbitration agreement for forbidding the assertion of certain statutory rights. It later went on to talk about the application of COGSA in the Viamar case, in which COGSA has a provision that prohibits any agreement relieving or lessening the liability of the carrier. Then it went on to say that describing that such a provision is as close to a codification of the effective vindication exception as possible. So the best answer I can give is that that would be the standard that's been set forth by the Supreme Court, and clearly not having any remedy that fit the facts falls into that category. I mean, to follow Carnival's argument in this case, if say they adopted a choice of law that allowed a seaman to sue an employer for intentional torts only, they would be, under their argument that they've raised today, they would say that's an alternative remedy, even though the seaman would be deprived of his or her Jones Act negligence remedy. I mean, it's a remedy, it's just a remedy that doesn't fit the facts of the case, and I think what's important is that under the facts of this case, Svoro had a Jones Act remedy. Now, Judge Hull had asked about Sambula. Sambula is a pre Bonner Fifth Circuit case, and it was Judge Goldberg was the judge who rendered that. Contrary to the argument made by Carnival, there is about whether this remedy for vicarious liability is protected by the explicit public policy that the Supreme Court has recognized probably for longer than 100 years applicable to seaman. I think it's important to go back to the Jones Act. Unlike Shirk, which was a case that involved the claim under the 1934 Securities Act, which expressly did not include a civil cause of action for individual investors, the Jones Act does two things, which are significant for our discussion. One is it explicitly provides a civil remedy at law for seamen that are injured through the negligence of their employer. Secondly, it expressly adopts and incorporates the provisions of the FVLA. The Supreme Court has repeatedly said it adopts and incorporates all of those provisions. The FVLA expressly provides a cause of action against an employer based upon vicarious liability  It was on that backdrop that the court in Sambula concluded that there was a cause of action for negligence under the Jones Act for vicarious liability. One other point on this that I think is important, and that is that under the pre Bonner case of IVV security barge, which is also binding precedent in this court, the court held that there is no cause of action under general maritime law for negligence by a seaman against his employer. That it only arises by virtue of the Jones Act. And that's the status of the law, so on that note, since my time is up, I'll sit down.  Thank you, counsel.